PARISH v B F GOODRICH COMPANY

Docket No. 54960. Argued May 7, 1974 (Calendar No. 9).—Decided November 25, 1975.

Betty Parish and Dorothy Fink sustained injuries in an automobile accident in Ohio which, they claimed, was caused by the blowout of a tire manufactured by B. F. Goodrich Company. They brought an action against B. F. Goodrich Company to recover damages for personal injuries; the complaint consisted of counts in negligence and breach of the implied warranties of merchantability and of fitness. Plaintiff Parish purchased the tire in Michigan approximately four months before the accident. The Wayne Circuit Court, Thomas Roumell, J., granted accelerated judgment for the defendant on the ground that plaintiffs' causes of action accrued in Ohio and were barred by the Ohio statute of limitations, made applicable by the Michigan "borrowing" statute, MCLA 600.5861; MSA 27A.5861. The Court of Appeals, Lesinski, C. J., and J. H. Gillis and Peterson, JJ., reversed, holding that the cause of action in warranty accrued in Michigan and was governed by the Michigan statute of limitations (Docket No. 14606). Defendant appeals. *Held:*

1. A product liability claim of a consumer against a manufacturer, for purposes of the borrowing statute, accrues when and where injury and damage are suffered.

2. Plaintiffs' claims did not accrue until all the elements of the cause of action were present, *i.e.,* the blowout, resulting in accident and injury, outside of Michigan; thus, the borrowing statute applies and Ohio's shorter limitation governs. The Uniform Commercial Code did not create a new and separate consumer's product liability claim against the manufacturer. The provision of the code that a warranty is breached upon tender of delivery (in this case, in Michigan), while satisfactory

REFERENCES FOR POINTS IN HEADNOTES

[1–5, 7, 8, 14] 51 Am Jur 2d, Limitation of Actions §§ 107–137.
  63 Am Jur 2d, Products Liability §§ 95, 221–223.
[6] 51 Am Jur 2d, Limitation of Actions § 105.
[9, 10] 51 Am Jur 2d, Limitation of Actions § 102.
[11–13, 15] 63 Am Jur 2d, Products Liability §§ 92, 102, 103, 110, 112, 119, 121, 165, 196.

in a commercial setting, is inconsistent with principles developed by the courts in consumer actions against manufacturers for personal injury. To hold that the consumer's claim for personal injury accrues when the breach occurs, regardless of lack of knowledge of the breach, would be inconsistent with existing statute and case law.

3. The Legislature did not intend to allow plaintiffs, inhibited from forum-shopping by the borrowing statute, to accomplish the same purpose by elaborating a legal theory; it did not intend that the time for commencement of a product-liability action against a manufacturer depend on whether plaintiffs' theory of liability is grounded in tort or contract.

Williams, J., dissented. He would hold that in addition to the judicially developed cause of action against the manufacturer, consumers have a separate alternative cause of action created by the Legislature in the Uniform Commercial Code, with a different statute of limitations. He would remand to the trial court to determine whether the plaintiffs could properly maintain an action under the code in this case.

46 Mich App 85; 207 NW2d 422 (1973) reversed.

OPINION OF THE COURT

1. PRODUCTS LIABILITY—ACCRUAL OF ACTION.

A product liability claim of a consumer against a manufacturer accrues when and where injury and damage are suffered (MCL 440.2725; MSA 19.2725).

2. LIMITATION OF ACTIONS—UNIFORM STATUTE OF LIMITATIONS ON FOREIGN CLAIMS ACT—TIRE—PRODUCTS LIABILITY—ACCRUAL OF ACTION.

The "borrowing" statute. providing that the period of limitation applicable to a claim accruing outside of Michigan shall be either that prescribed by the law of the place where the claim accrued or by the law of Michigan, whichever bars the claim, applies and Ohio's shorter limitation governs where plaintiffs' claims did not accrue until the blowout of a defective tire in Ohio, resulting in accident and injury outside of Michigan (MCL 600.5861[2]; MSA 27A.5861[2]).

3. LIMITATION OF ACTIONS—CHOICE OF LAW.

At common law, the limitational periods of the forum generally controlled the time for commencing an action, whether the claim arose within or outside the forum.

4. LIMITATION OF ACTIONS—BORROWING STATUTES.

Borrowing statutes, enacted to resolve the possible conflicts of laws that may arise when a plaintiff's claim accrues outside the forum, including Michigan's typically confine a plaintiff whose claim accrues outside the forum to the limitational period, of the forum or the state where the claim accrued, allowing the least time to commence the action (MCL 600.5861[2]; MSA 27A.5861[2]).

5. LIMITATION OF ACTIONS—UNIFORM STATUTE OF LIMITATIONS ON FOREIGN CLAIMS ACT—FORUM SHOPPING—PRODUCTS LIABILITY.

The Legislature did not intend to allow plaintiffs, inhibited by the borrowing statute from shopping for a forum with a favorable limitational period, to accomplish the same purpose by elaborating a legal theory; it was not intended that the time for commencement of a product-liability action against a manufacturer depend on whether plaintiff's theory of liability is grounded in tort or contract (MCL 600.5861[2]; MSA 27A.5861[2]).

6. LIMITATION OF ACTIONS—PERSONAL INJURY—TORTS—CONTRACTS— STATUTES.

The three-year limitational period applicable to "all other actions to recover damages for injuries to persons and property" applies without regard to whether the claim sounds in tort or contract, express or implied (MCL 600.5805[7]; MSA 27A.5805[7]).

7. PRODUCTS LIABILITY—ACTION—UNIFORM COMMERCIAL CODE.

The Uniform Commercial Code does not create a new and separate consumer's product-liability claim against a manufacturer.

8. ACTION—ACCRUAL—UNIFORM COMMERCIAL CODE—REVISED JUDICATURE ACT.

The section of the Revised Judicature Act providing that in actions for damages based on breach of warranty of quality or fitness the claim accrues at the time the breach of warranty is discovered or reasonably should be discovered is not a tolling statute; in terms it establishes when a "claim accrues", as does a section of the Uniform Commercial Code providing that a cause of action accrues when the breach occurs regardless of the aggrieved party's lack of knowledge of the breach (MCL 440.2725[2], 600.5833; MSA 19.2725[2], 27A.5833).

9. LIMITATION OF ACTIONS—UNIFORM STATUTE OF LIMITATIONS ON FOREIGN CLAIMS ACT—PERSONAL INJURY—PRODUCTS LIABILITY.

The tendency of Michigan's borrowing statute is to bar residents

of Michigan and nonresidents alike, who suffer personal injury outside this state, howsoever caused, from maintaining an action in Michigan unless commenced not later than the time allowed by the state of injury; the Supreme Court is not persuaded to carve out an exception for products-liability plaintiffs who are able to trace their personal injuries to a sale of the defendant manufacturer's goods in Michigan (MCL 600.5861[2]; MSA 27A.5861[2]).

10. PRODUCTS LIABILITY—ACCRUAL OF ACTION—LIMITATION OF ACTIONS—UNIFORM STATUTE OF LIMITATIONS ON FOREIGN CLAIMS ACT.

The products-liability claim of a consumer for personal injury against a manufacturer, whether postulated on theories of tort or contract or an amalgam of both, does not accrue for purposes of the borrowing statute (providing that the period of limitation applicable to a claim accruing outside of Michigan shall be either that prescribed by the law of the place where the claim accrued or by the law of Michigan, whichever bars the claim) until all elements of the cause of action are present (MCL 600.5861[2]; MSA 27A.5861[2]).

DISSENTING OPINION

WILLIAMS, J.

11. PRODUCTS LIABILITY—BREACH OF WARRANTY—UNIFORM COMMERCIAL CODE.

*The Uniform Commercial Code establishes a right of recovery for personal injuries resulting from breach of warranty separate from and in addition to the judicially developed "products liability" action (MCL 440.2725; MSA 19.2725).*

12. PRODUCTS LIABILITY—BREACH OF WARRANTY—UNIFORM COMMERCIAL CODE.

*The action for breach of warranty under the Uniform Commercial Code is subject to certain limitations, such as required notice of breach, disclaimer of implied warranties, modification or limitation of remedies by agreement, and to some extent a requirement of privity, which are not applicable to the common-law action for breach of warranty in a products liability case (MCL 440.2725; MSA 19.2725).*

13. LIMITATION OF ACTIONS—BREACH OF WARRANTY—UNIFORM COMMERCIAL CODE.

*The four-year statute of limitations of the Uniform Commercial Code applies to an action under the code for personal injury*

*resulting from breach of warranty (MCL 440.2725; MSA 19.2725).*

14. LIMITATION OF ACTIONS—ACCRUAL OF ACTION—UNIFORM COMMERCIAL CODE.

*A cause of action for breach of warranty under the Uniform Commercial Code accrues where and when the tender of delivery is made (MCL 440.2725; MSA 19.2725).*

15. PRODUCTS LIABILITY—BREACH OF WARRANTY—UNIFORM COMMERCIAL CODE.

*An action for personal injuries sustained in an accident in Ohio resulting from a defect in an automobile tire sold in Michigan should be remanded to the trial court to determine whether on the facts the plaintiff may maintain an action under the Uniform Commercial Code for breach of warranty, and thus be subject to the four-year statute of limitations in the code rather than the two-year Ohio statute of limitations for personal injuries (MCL 440.2725; MSA 19.2725).*

*Zeff & Zeff (Edward Grebs,* of counsel), for plaintiffs.

*Harvey, Kruse & Westen, P. C.* (by *James N. Martin* and *James D. Hunter),* for defendant.

LEVIN, J. The question is, for purposes of determining, under the borrowing statute, the applicability of Michigan's or of another state's statute of limitations, whether a product liability claim of a consumer against a manufacturer accrues in the state where the product is sold or the state where the alleged defect in the product becomes apparent, causing injury and damage. We hold that the claim accrues when and where injury and damage are suffered.

I

Claiming that their injuries in an automobile accident were caused by the blowout of a defective tire, the plaintiffs, the owner-driver and her pas-

senger, commenced an action against the defend-
ant, manufacturer of the tire.

In Ohio, where the accident occurred, an action
for bodily injury "shall be brought within 2
years".[1] In Michigan, where this action was com-
menced, actions to recover damages for injuries to
persons or property must be brought within three
years.[2] This action was commenced more than two
but less than three years after the accident.

The Michigan borrowing statute, the Uniform
Statute of Limitations on Foreign Claims Act,
provides: "The period of limitation applicable to a
*claim accruing outside of this state* shall be either
that prescribed by the law of the place where the
claim accrued or by the law of this state, which-
ever bars the claim." MCLA 600.5861(2); MSA
27A.5861(2). (Emphasis supplied.)

The trial court granted the defendant an accel-
erated judgment based on Ohio's statute of limita-
tions. The Court of Appeals agreed that the Ohio
statute barred plaintiffs' negligence counts but

[1] Ohio Rev Code Anno, § 2305.10.

In a pre-Uniform Commercial Code case, *Andrianos v Community
Traction Co,* 155 Ohio St 47, 51; 97 NE2d 549, 552 (1951), the Ohio
Supreme Court held that § 11224-1, General Code, establishing a two-
year limitation for an "action for bodily injury," applied even to those
personal injury actions arising out of a breach of an implied contract,
otherwise a six-year limitation:

"Surely, the General Assembly did not intend to create different
periods of limitation for the recovery of damages growing out of
bodily injury, depending on the form of the action brought. No matter
what form is adopted, the essence of the action is the wrongful injury,
and that it arose from the breach of an express or implied contract is
immaterial."

The Ohio Supreme Court has held that the four-year UCC § 2-725
time limitation does not apply unless there is a contractual relation-
ship between plaintiff and defendant and, therefore, an Ohio two-year
statute governs an action by a lessee against a manufacturer where
there was no contractual relationship. *United States Fidelity &
Guaranty Co v Truck & Concrete Equipment Co,* 21 Ohio St 2d 244;
257 NE2d 380 (1970).

[2] MCLA 600.5805(7); MSA 27A.5805(7).

held that the warranty counts could be maintained. Because the tire was sold in Michigan, the "causes of action for breach of warranty" accrued in Michigan and the borrowing statute did not apply.

The Court of Appeals relied on § 2-725(1) of the Uniform Commercial Code,[3] providing that an action "for breach of any contract for sale" must be brought within four years and that a breach of warranty occurs "regardless of the aggrieved party's lack of knowledge of the breach * * * *when tender of delivery is made*". (Emphasis supplied.)[4] Plaintiffs claim that the tire was purchased in late 1968. This action was commenced March 10, 1972.

We reverse the Court of Appeals and affirm the accelerated judgment. Plaintiffs' claims did not accrue until the blowout, resulting accident and injury "outside of this state". Michigan's borrowing statute, thus, applies, and Ohio's shorter limitation governs.

## II

At common law, the limitational periods of the forum generally controlled the time for commencing an action, whether the claim arose within or outside the forum.[5]

Most states have enacted "borrowing statutes"

---

[3] "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warrant explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." MCLA 440.2725(2); MSA 19.2725(2).

[4] *Parrish v B F Goodrich Co,* 46 Mich App 85; 207 NW2d 422 (1973).

[5] Ehrenzweig, Conflict of Laws, § 37, p 130; Restatement Conflict of Laws, §§ 603–604, pp 720–722; 51 Am Jur 2d, Limitation of Actions, § 66, p 645.

*See also Lambert v Calhoun,* 394 Mich 179; 229 NW2d 332 (1975).

to resolve the possible conflicts of laws that may arise when a plaintiff's claim accrues outside of the forum. Borrowing statutes, including Michigan's, typically confine a plaintiff whose claim accrues outside the forum to the limitational period—of the forum or the state where the claim accrued—allowing the least time to commence the action.[6]

The issue presented is one of statutory construction—specifically, the meaning to be ascribed to the words "claim accruing outside of this state".

We are persuaded that the Legislature did not intend to allow plaintiffs, inhibited by the borrowing statute from shopping for a forum with a favorable limitational period, to accomplish the same purpose by elaborating a legal theory; it was not intended that the time for commencement of a product-liability action against a manufacturer depend on whether plaintiff's theory of liability is grounded in tort or contract.

## III

The provisions of UCC § 2-725 (a warranty is breached upon tender of delivery), while entirely satisfactory in a commercial setting, are inconsistent with principles developed by the courts in consumer actions against manufacturers for personal injury. While most business losses attributable to a defective product will surface during the four-year period prescribed by § 2-725, consumers often suffer personal injury after a longer period of time has elapsed. Adopting time of delivery, without regard to time of discovery, as the point of

_____
[6] Ehrenzweig, Conflict of Laws, § 161, p 430; 51 Am Jur 2d, Limitation of Actions, § 67, p 647.

*See also Long v Pettinato,* 394 Mich 343; 230 NW2d 550 (1975).

departure for statute of limitations purposes frequently will produce unsatisfactory results in personal injury cases.[7]

Section 2-725 concerns, if not only, primarily claims based on an *agreement* of the parties to the litigation—including actions based on warranties implied from or in respect of their agreement.[8]

The product liability of a manufacturer, not in direct dealing with the consumer,[9] has, in contrast, been imposed by the courts with little or no regard

---

[7] In *Mendel v Pittsburgh Plate Glass Co*, 25 NY2d 340, 346; 305 NYS2d 490; 253 NE2d 207 (1969), a majority of the New York Court of Appeals declared that § 2-725 barred an action by a customer of a bank who was injured by a product sold to the bank more than four years before the injury occurred. The dissenters thought it "all but unthinkable" that the Court would conclude that plaintiff was precluded "from prosecuting a cause of action before he ever had one". *See* Symposium, *Mendel v Pittsburgh Plate Glass Company*, 45 St John's L Rev 62 (1970).

[8] Although UCC § 2-318 (MCLA 440.2318; MSA 19.2318) has increased the number of persons in privity with a seller, a number of courts have held that the § 2-725 requirement of a "contract for sale" still remains and that the personal injury statute of limitations applies where there is no contractual relationship. *See International Union of Operating Engineers, Local 57 v Chrysler Motors Corp*, 106 RI 248; 258 A2d 271 (1969); *Kelly v Ford Motor Co*, 110 RI 83; 290 A2d 607 (1972); *Rosenau v New Brunswick*, 51 NJ 130; 238 A2d 169 (1968); *United States Fidelity & Guaranty Co v Truck & Concrete Equipment Co, supra*.

Some courts have ruled that § 2-725 supersedes the personal injury limitation where there is a contractual relationship between the plaintiff-buyer and the defendant-seller of the allegedly defective product. *See, e.g., Redfield v Mead, Johnson & Co*, 266 Or 273; 512 P2d 776 (1973); *Gardiner v Philadelphia Gas Works*, 413 Pa 415; 197 A2d 612 (1964); *Sinka v Northern Commercial Co*, 491 P2d 116 (Alas, 1971).

Other courts, holding that "the period within which a suit must be brought [is] not to turn on what form of action was pleaded, but rather on the nature of the damage", have adhered to their personal injury statute of limitations even though there is a contractual relationship. *Heavner v Uniroyal, Inc*, 63 NJ 130, 145; 305 A2d 412, 420 (1973); *cf. Tyler v R Street & Co*, 322 F Supp 541 (ED Va, 1971). *See, generally*, Anno: *Construction and Effect of UCC Art 2, Dealing with Sales*, 17 ALR3d 1010, 1146.

[9] One of the plaintiffs asserted, in an affidavit opposing defendant's motion for accelerated judgment, that she had purchased the tire from one of defendant's "authorized retailers", a gasoline station in Detroit.

to whether there is an agreement between the parties and in the face of attempts by some manufacturers to disclaim liability in recitals accompanying the product into the market place.

While some of the concepts (e.g., implied warranty) developed by the courts in creating the consumer's right of direct action against the manufacturer have been enacted into statute, the UCC draftsmen have acknowledged that the consumer's remedy is not statutory, but essentially a judicial development which the courts should be free to develop further.[10] The UCC did not create a new and separate consumer's product liability claim against the manufacturer.

This Court has consistently held that the three-year limitational period applicable to "all other actions to recover damages for injuries to persons and property" applies without regard to whether the claim sounds in tort or contract, express or implied.[11]

To hold that the consumer's claim against a manufacturer for personal injury "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach" (UCC § 2-725) would be inconsistent with

—the general rule of law that a claim for personal injury does not accrue for statute of limitations purposes until all elements of the claim, including the element of damage, are present;[12]

—recent holdings of this Court in consumer

---

[10] See Official UCC Comment to § 2-318 and commentary accompanying Restatement Torts 2d, § 402A, p 347; *Cova v Harley Davidson Motor Co*, 26 Mich App 602; 182 NW2d 800 (1970).

[11] See *State Mutual Cyclone Insurance Co v O & A Electric Cooperative*, 381 Mich 318; 161 NW2d 573 (1968). See, also, *Coates v Milner Hotels, Inc*, 311 Mich 233; 18 NW2d 389 (1945); *Baatz v Smith*, 361 Mich 68; 104 NW2d 787 (1960).

[12] *Connelly v Paul Ruddy's Equipment Repair & Service Co*, 388 Mich 146; 200 NW2d 70 (1972).

actions against suppliers of services, that the stat-
ute of limitations does not begin to run before the
plaintiff discovers or in the exercise of reasonable
diligence should have discovered his loss;[13]

—the goal of a unified product liability cause of
action, disentangled from allegiance to warranty
or tort concepts, whether the question presented is
"procedural" or "substantive"[14] (a consumer has
only one product liability "claim" against a manu-
facturer [wherever it arises], however many counts
and legal theories *[e.g.,* negligence, warranty, strict
liability] he may advance in support of that one
claim);

—RJA § 5833: "In actions for damages based on
breach of a warranty of quality or fitness the
claim accrues at the time the breach of the war-
ranty is discovered or reasonably should be discov-
ered."[15]

---

[13] *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973) (medical
malpractice); *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974)
(action against abstracter, by person not in privity with abstracter
who acquires real property and up-dated abstract, for negligent
misrepresentation based on faulty certification of abstract).

[14] *See Cova v Harley Davidson Motor Co, supra,* pp 614–616.

"Two theories of recovery and three distinct tests of defect have
been employed by the courts in delineating the ambit of responsibility
of a manufacturer in the absence of proof of negligence. The theories
have, of course, been those of implied warranty and strict liability in
tort. Often, appellate courts have approved and authorized charges on
both theories. Indeed a charge to the jury in a product liability case is
often a conglomerate of three theories—negligence, implied warranty
and strict liability in tort. Such charges are often unintelligible even
to a sophisticated lawyer unless he has specialized on this subject, and
certainly they are so to a lay jury. Our supreme courts should arrive
at *a* theory of recovery to the exclusion of all others. Trial judges
cannot under the present state of the law be criticized for being
unable to submit a product liability case to a jury in a satisfactory
manner. This situation emphasizes the fact that lack of efficiency in
the administration of justice is often due to the complexities and
ambiguities of the substantive law rather than to either court orga-
nization or court procedures. The fact that litigants, especially plain-
tiffs, want as a matter of tactics to employ all three theories is not at
all decisive." (Emphasis by author.) Keeton, *Product Liability and the
Meaning of Defect,* 5 St Mary's LJ 30, 35–36 (1973).

[15] MCLA 600.5833; MSA 27A.5833.

The Court of Appeals sought to reconcile the conflict between its conclusion that § 2-725 determines *where* a claim for implied warranty accrues and the "long standing policy in Michigan that the statute of limitations should not expire before damage has been suffered"[16] by reading RJA § 5833 ("the claim accrues" in actions for breach of warranty of quality or fitness when the breach is discovered or reasonably should have been) as tolling, until damage is suffered, the running of the statute against the claim which, under the Court's construction of § 2-725, accrues upon tender of delivery.[17]

We find that analysis strained, unpersuasive and inconsistent with the purpose of § 2-725 to commence the running of the four-year limitational period, applicable to UCC contract of sale actions, *instanter* upon tender of delivery. RJA § 5833 is not a tolling statute; in terms it establishes, as does § 2-725,[18] when a "claim accrues".

## IV

We have considered the so-called "interest anal-

---

[16] *Parrish v B F Goodrich Co, supra,* p 91.

[17] The Court of Appeals reasoned:

"We think the language of the commercial code to the effect that a breach of warranty occurs at delivery should be used to determine *where* the cause of action accrued; not when. There has been a longstanding policy in Michigan that the statute of limitations should not expire before damage has been suffered. *Felt v Reynolds Rotary Fruit Evaporating Co,* 52 Mich 602 (1884). That policy led to the enactment of MCLA 600.5833, *supra,* which now should be read as a *tolling* statute, unaffected by the subsequent language of the commercial code. The effect of such an interpretation leads to the conclusion that the causes of action in this case accrued in Michigan where the potential liability for breach of warranty occurred, but that the limitation period did not begin to run until the damage was suffered." (Emphasis by the Court.) *Parrish v B F Goodrich Co, supra,* p 91.

[18] Section 2-725 uses the term "cause of action". We discern no difference between that term and "claim".

ysis"[19] and whether Michigan, the state where the tire was purchased, has a special interest justifying the conclusion that plaintiffs' claims "arose" in this state:

"The state [of purchase] has a concern for the control of its own commercial climate: for protecting those who come to purchase, and for exacting assurances of safety from those who do business in its markets." Note, *Products Liability and the Choice of Law,* 78 Harv L Rev 1452, 1464 (1965).

Analogous reasoning would emphasize the state's interest in protecting its residents against short statutes of limitations of infortuitous places where breach, injury or damage is suffered. But the Legislature could have both barred nonresidents from coming into this state in search of a longer statute of limitations and allowed Michigan residents (who generally are not forum shopping) the benefit of Michigan's frequently longer limitational period by exempting, as many states have, its own residents from the restrictions of its borrowing statute.[20]

The Legislature, however, on the recommendation of the Commissioners on Uniform State Laws, has chosen an undifferentiating course barring Michigan residents, as well as nonresidents, from maintaining actions in Michigan courts that accrue in another state and which are time-barred in

[19] *See George v Douglas Aircraft,* 332 F2d 73 (CA 2, 1964), *cert den* 379 US 904; 85 S Ct 193; 13 L Ed 2d 177 (1964); Gegan, *Where Does a Personal Injury Action Accrue Under the New York Borrowing Statute,* 47 St John's L Rev 62, 68–73 (1972); Wurfel, *Statutes of Limitations in the Conflict of Laws,* 52 NC L Rev 489, 525–530 (1974); Kühne, *Choice of Law in Products Liability,* 60 Cal L Rev 1 (1972).

[20] *See* Proyect, *A Study of the Uniform Statute and the Present State of the Law Limiting Claims Arising in Foreign States,* 4 Wayne L Rev 123, 124–125 (1958); Ehrenzweig, Conflict of Laws, § 161, p 430. *See, e.g.,* NY Civ Prac § 202 (McKinney, 1972).

that state.[21] This suggests that there is no legislative policy of special concern for Michigan residents overriding the considerations which prompted the Commissioners on Uniform State Laws to make residence irrelevant.

The tendency of Michigan's borrowing statute is to bar residents of Michigan and nonresidents alike, who suffer personal injury outside this state, howsoever caused, from maintaining an action in Michigan unless commenced not later than the time allowed by the state of injury. We are not persuaded to carve out an exception for product liability plaintiffs who are able to trace their injuries to a sale of the defendant manufacturer's goods in this state.

We conclude that the product liability claim of a consumer for personal injury against a manufacturer, whether postulated on theories of tort or contract or an amalgam of both, does not accrue for purposes of the borrowing statute until all elements of the cause of action are present.

Reversed and remanded for entry of judgment dismissing the complaint.

T. G. KAVANAGH, C. J., and COLEMAN and FITZGERALD, JJ., concurred with LEVIN, J.

LINDEMER, J. took no part in the decision of this case.

WILLIAMS, J. *(to reverse trial court and remand).* The issue in this case is whether the Uniform Commercial Code (the UCC)[1] establishes a right of recovery for personal injuries which is governed by

---

[21] *Long v Pettinato,* fn 6 *supra,* at 349.

[1] MCLA 440.1101 *et seq.;* MSA 19.1101 *et seq.*

the four-year-from-date-of-tender-of-delivery stat-
ute of limitations contained in § 2-725[2] of the UCC
and which is separate from the judicially devel-
oped "products liability" right of action for recov-
ery of personal injuries and its three-year-from-
date-of-injury statute of limitations.

My learned brother, Justice LEVIN, has con-
cluded that § 2-725 is inapplicable to actions seek-
ing recovery for personal injuries.

This opinion holds that the UCC does establish
its own right of recovery for personal injuries
separate from and in addition to the judicially
developed "products liability" and that if an action
is properly maintained under the UCC, the limita-
tion period contained in § 2-725 should apply.[3]

The question remains whether the plaintiffs in
the facts of this case can properly maintain an
action under the Uniform Commercial Code. This
question was not addressed by the trial court nor
was it briefed by the parties in their arguments
before this Court. The instant proceeding should
be remanded to the trial court for resolution of
this question.

---

[2] Section 2-725 provides:

"(1) An action for breach of any contract for sale must be com-
menced within 4 years after the cause of action has accrued. By the
original agreement the parties may reduce the period of limitation to
not less than 1 year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of
the aggrieved party's lack of knowledge of the breach. A breach of
warranty occurs when tender of delivery is made, except that where a
warrant explicitly extends to future performance of the goods and
discovery of the breach must await the time of such performance the
cause of action accrues when the breach is or should have been
discovered." MCLA 440.2725; MSA 19.2725.

[3] Of course the breach of warranty action under the code was not
intended to be an exclusive remedy in personal injury cases where it
is applicable. Nothing prevents a plaintiff from maintaining action
based upon the code's warranty and also upon the judicially devel-
oped theories of liability. See § I of this opinion.

I—BREACH OF WARRANTY—ONE THEORY OR TWO?

The evolution of the law towards recognition of the manufacturer's liability in favor of a consumer for injuries suffered as a result of a defective product attributable to that manufacturer has been a long process.[4] However, after this Court's decision in *Piercefield v Remington Arms Co,* 375 Mich 85; 133 NW2d 129 (1965), there can be little doubt that such a liability against the manufacturer of defective products is recognized in this state.

In the development of this area of the law, the judicially developed theory of liability based upon the concept of "warranty" has served as a cornerstone. The initial question we must answer is whether the warranty protection afforded by the UCC is separate and distinct from this judicially developed theory of warranty. We answer this question in the affirmative.

*A. Breach of Warranty Under the UCC*

The UCC was enacted by the Legislature, *inter alia,* "to simplify, clarify and modernize the law governing commercial transactions".[5] It is designed to delineate the rights and liabilities of the various parties involved in a sale of "goods". The UCC provides for seller liability based upon implied warranties of merchantability[6] and fitness for a particular purpose.[7]

---

[4] Comprehensive discussion of the evolution of products liability law in Michigan may be found in Comment, *Products Liability in Michigan: Implied Warranty, Strict Tort, or Both?,* 15 Wayne L Rev 1558 (1969). *See also* Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer),* 69 Yale L J 1099 (1960).

[5] MCLA 440.1102; MSA 19.1102.

[6] "(1) Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under

With either of these two warranties the plaintiff must prove particular facts before he can recover against the defendant.[8] In addition the code provides a number of defenses which a defendant may invoke to avoid liability. Under the code "the buyer must within a reasonable time after he discovers or should have discovered any breach

---

this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as

"(a) pass without objection in the trade under the contract description; and

"(b) in the case of fungible goods, are of fair average quality within the description; and

"(c) are fit for the ordinary purposes for which such goods are used; and

"(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) are adequately contained, packaged, and labeled as the agreement may require; and

"(f) conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade." MCLA 440.2314; MSA 19.2314.

[7] "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." MCLA 440.2315; MSA 19.2315.

[8] To recover for breach of the warranty of merchantability the plaintiff must prove:

"(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, and (3) injury and damages to the plaintiff or his property (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to seller of injury." White & Summers, Uniform Commercial Code, § 9-6, p 286.

The conditions necessary to recover for breach of the warranty of fitness for a particular use include:

"(1) The seller must have reason to know the buyer's particular purpose.

"(2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods.

"(3) The buyer must, in fact, rely upon the seller's skill or judgment." White & Summers, *supra*, § 9-9, p 297.

notify the seller of breach".[9] If the buyer fails to provide this notice he will be barred from any recovery. The seller may disclaim the implied warranties[10] and in some instances modify or limit the buyer's remedies.[11]

Finally, with UCC warranty actions, the requirement of privity is still applicable to some extent.[12]

Thus, while the warranties under the code afford the consumer a measure of protection against defective goods, this protection is subject to certain limitations. As will be seen below, the scope of coverage under the UCC is not as great as that under the judicially created cause of action for breach of warranty.

### B. Breach of Warranty at Common Law

The judicially developed "warranty" liability[13]

[9] MCLA 440.2607(3)(a); MSA 19.2607(3)(a).

[10] MCLA 440.2316; MSA 19.2316.

[11] MCLA 440.2719; MSA 19.2719.

[12] With regards to horizontal privity, § 2-318 (MCLA 440.2318; MSA 19.2318) makes it clear that the code's warranty protection extends beyond the buyer only to those persons in the buyer's family or household. The code has left the applicability of vertical privity somewhat ambiguous. See footnote 21 and accompanying text of this opinion, *infra.*

The extent to which the requirements of privity affect the plaintiffs' maintenance of this action under the code is a matter to be resolved upon remand to the trial court. See Part III of this opinion.

[13] The use of the term "warranty" to describe the judicially imposed liability upon the manufacturer of defective goods has been the subject of some criticism by legal scholars and judges alike, and many favor the adoption of some other term such as "strict liability" to characterize this liability. *See* Traynor, *The Ways and Meanings of Defective Products and Strict Liability,* 32 Tenn L Rev 363 (1965).

The term "warranty" is often identified with contract principles, yet as we will see the liability imposed at common law upon the manufacturer does not arise from the contractual agreement. The use of the term "warranty" to describe this common law duty also leads to confusion with those warranties imposed upon a seller by the UCC.

Perhaps as Justice, then Judge, Levin, suggested in *Cova v Harley Davidson Motor Co,* 26 Mich App 602; 182 NW2d 800 (1970), a neutral term such as "products liability" should be used to describe the liability imposed "on a manufacturer in favor of a consumer for loss suffered by reason of a defective product attributable to that manufacturer". *Supra,* 615.

against manufacturers of defective goods, unlike the legislatively created warranties in the UCC, is not based solely upon contract principles.

In *Piercefield v Remington Arms Co,* 375 Mich 85; 133 NW2d 129 (1965), this Court, utilizing the concept of "warranty", recognized the manufacturer's [of a defective shotgun shell] liability to a plaintiff who was neither a purchaser nor user of the product. The Court held that this warranty theory was not based solely upon contract principles, stating:

" 'The duty of impliedly warranting the quality and fitness of the product has become a duty imposed by law. In effect, the warranty runs with the chattel. * * * the duty is not imposed by the terms of the contractual relationship * * * .' " Quoting from Bushnell, *Practical Aspects of Defending Products Liability Cases,* 11 Defense L J 99 (1962). *Supra,* 100.

Quoting from *Picker X-Ray Corp v General Motors Corp,* 185 A2d 919, 922 (Mun App DC, 1962), the Court in *Piercefield* went on to describe this judicially evolved theory of warranty in the following terms:

" 'There seems to be some confusion in understanding the nature of implied warranty liability. In the first place, concepts of negligence and fault, as defined by negligence standards, have no place in warranty recovery cases. Proof of negligence is unnecessary to liability for breach of implied warranty and the lack of it is *implied,* either in fact or in law, no express representations or agreements by the manufacturer are needed.

---

But regardless of whether the characterization of this judicially developed liability imposed upon a manufacturer should or will change, it is clear as is demonstrated below that presently there exist two independent "warranty" theories upon which liability for a defective product may be imposed. One theory is based upon the code and the other is based upon the common law.

Implied warranty recovery is based upon two factors: (a) The product or article in question has been transferred from the manufacturer's possession while in a "defective" state, more specifically, the product fails either to be "reasonably fit for the particular purpose intended" or of "merchantable quality," as these two terms, separate but often overlapping, are defined by the law; and (b) as a result of being "defective," the product causes personal injury or property damage.' " *Supra,* 96–97.

The Court in *Piercefield* also recognized that the judicially created breach of warranty was distinct from those warranties imposed by the statutory forerunner to the UCC, the uniform sales act (1948 CL 440.49).[14] It is likewise true that this common-law warranty exists independent of the implied warranties contained in the Code. The warranty given birth by the courts extends protection well beyond that given by the code's warranties. Not only is the requirement of privity inapplicable[15] but the manufacturer may not rely on the affirmative defenses of lack of notice, disclaimer of warranties, limitations of remedies as he can under the code.[16] When courts talk about warranty based

[14] The Court stated that:

"The question refers, of course, to the notice requirement of section 49 of the uniform sales act (CL 1948, § 440.49 [Stat Ann 1959 Rev § 19.289]). For the same reasons as were made to appear in *Greenman v Yuba Power Products, Inc,* 59 Cal 2d 57, 60–62 (27 Cal Rptr 697, 699–701; 377 P2d 897, 899–901) [1963], I would hold that the giving of notice under said section 49 is not a prerequisite to institution and maintenance of this plaintiff's suit. Said section 49 deals with the rights of the parties to a contract of sale. It does not require that notice must be given of breach of a warranty that arises by legal implication distinct from a contract of sale. 'Such warranties are not imposed by the sales act, but are the product of common-law decisions that have recognized them in a variety of situations.' *(Greenman,* at 61 [27 Cal Rptr 699, 377 P2d 899])." *Piercefield, supra,* 99–100.

[15] *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120, 135; 90 NW2d 873 (1958); *Piercefield v Remington Arms Co, supra,* 98.

[16] *Browne v Fenestra, Inc,* 375 Mich 566, 571; 134 NW2d 730 (1965); *Piercefield v Remington Arms Co, supra,* 99.

on law, not the contractual agreements, and hold that a manufacturer may not avail himself of the defense provided by the code, it is quite evident that they are not talking about a warranty based upon the code.

Thus, it can be said that in Michigan there exist two separate and distinct theories of warranty liability—one judicially developed and the other enacted by the Legislature.

## II—§ 2-725 STATUTE OF LIMITATIONS CONTROLS IN WARRANTY ACTIONS BROUGHT UNDER THE CODE

Where plaintiff seeks to impose liability upon a defendant for personal injuries suffered and does not base his claim upon the UCC, there is no question but that the three-years-from-date-of-injury period of limitation would apply.[17] However, where a plaintiff may properly rely upon the UCC and chooses to base his claim upon the code, the statute of limitation contained in the code governs.[18]

There is no question that the code authorized recovery for breach of warranty includes damages for personal injuries. Section 2-715 provides:

---

[17] *See State Mutual Cyclone Insurance Co v O & A Electric Cooperative,* 381 Mich 318; 161 NW2d 573 (1968).

The breach of warranty action in *Cyclone* was not based upon either of the code's warranties but upon the common law theory. The Court did not address itself to the question of what the proper statute of limitations would be if the action had been brought under the code.

[18] A specific statutory provision [here § 2-725 which sets the limitation for personal injury actions based upon breach of one of the UCC's warranties] takes precedence over the general statute [MCLA 600.5833; MSA 27A.5833 which provides the rule for all other personal injury breach of warranty actions]. *See Edwards v Auditor General,* 161 Mich 639, 644; 126 NW 853 (1910); *Reed v Secretary of State,* 327 Mich 108, 113; 41 NW2d 491 (1950); *Dossin's Food Products, Inc v State Tax Commission,* 360 Mich 312, 315; 103 NW2d 474 (1960). However, by electing to maintain an action under the code, a plaintiff is not precluded from pleading breach of common law warranty as well. In some cases liability will attach under either theory.

" * * * Consequential damages resulting from the seller's breach include * * * injury to person or property proximately resulting from any breach of warranty."[19]

The four-year-from-date-of-tender-of-delivery statute of limitation contained in § 2-725 was meant to govern in actions brought under the code. Since the code contemplates that breach of warranty actions may be brought under the code for personal injuries, it follows that in personal injuries action maintained under the UCC, the code's statute of limitation, and not as Justice Levin suggests the three-year general statute of limitations, should govern.

Courts in other jurisdictions have recognized:

"that where an action is correctly brought within the framework of the Uniform Commercial Code, the applicable statute of limitations is that provided by the code, although the damages sought are for personal injuries." *Sinka v Northern Commercial Co,* 491 P2d 116, 118 (Alas, 1971).

See also *Kelly v Ford Motor Co,* 110 RI 83; 290 A2d 607, 609 (1972); *Redfield v Mead, Johnson & Co,* 266 Or 273; 512 P2d 776, 777 (1973).

My brother, Justice Levin, argues that the four-year-from-date-of-delivery period prescribed by § 2-725 is entirely satisfactory in commercial settings but is "inconsistent with principles developed * * * for personal injury". *Parish v B F Goodrich Co, ante,* 395 Mich 271, 278; 235 NW2d 570 (1975).

While it is true that in most situations the three-years-from-date-of-injury statute of limitations will provide the consumer the greater protection, there will be cases in which the suit will be

[19] MCLA 440.2715; MSA 19.2715.

brought by the consumer more than three years
after injury but less than four years after tender
of delivery. In these cases the consumer would be
better protected by reliance upon the § 2-725 stat-
ute of limitations. Justice LEVIN makes a forceful
argument for a uniform products liability cause of
action based upon the three-year-personal-injury
statute of limitations. However, in our zeal for
such a uniform cause of action we cannot ignore a
distinct cause of action created by the Legislature.
The code gives a plaintiff an alternate cause of
action with a different statute of limitations.
Where a plaintiff may benefit from the four-year
period and he may properly bring an action under
the UCC, he should not be precluded from doing
so.

### III—APPLICABILITY OF § 2-725 TO THE INSTANT CASE

The complaint of the plaintiffs consisted of one
count of negligence and one count of breach of
warranties. The latter was framed in the language
of the code.[20]

With regard to the negligence count we concur
with Justice LEVIN's treatment of the applicability
of Michigan's borrowing statute, MCLA
600.5861(2); MSA 27A.5861(2). However, concern-
ing the other count, if the plaintiffs are in a
position to maintain a warranty action under the
UCC, the borrowing statute would be inapplicable.
This is because a breach of warranty action under
the UCC accrues where and when the tender of
delivery is made. Tender of delivery of the al-

---

[20] Plaintiffs' complaint reads in pertinent part:

"That the defendant herein warranted in the design, manufacture,
assembly, inspection and sale of the aforesaid tire, that such tire was
fit for the ordinary and general purposes for which it was intended
and was therefore of merchantable quality; and was also fit for the
specific purpose for which it would be used."

legedly defective tire was made in Michigan so the cause of action under the code accrued in Michigan.

The important question whether the plaintiffs on the facts may properly bring an action under the Uniform Commercial Code remains to be answered. It will be recalled that protection under the UCC warranties of merchantability and fitness for a particular purpose is not as broad in scope as that of the judicially developed concept of warranty.[21]

The availability of the UCC warranties to the plaintiffs was not resolved by the trial court nor was the question briefed by the parties in their arguments before this Court. The interests of justice would best be served by remanding this matter to the trial court in order that this question may be properly addressed and resolved.

---

[21] One issue which must be resolved is whether the plaintiffs' claim under the UCC will be barred for lack of vertical privity. Section 2-318, the code provision dealing with questions of privity provides:

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

Comment 3 to this section reads in pertinent part:

"[T]he section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to the other persons in the distributive chain."

Courts have reached differing conclusions as to exactly what the drafters of the code had in mind when they included Comment 3 and what if any are the requirements for vertical privity under the code. *See Miller v Preitz,* 422 Pa 383; 221 A2d 320, 324–325 (1966). But see *Picker X-Ray Corp v General Motors Corp,* 185 A2d 919, 922–923 (DC Mun Ct App, 1962).

The question of whether vertical privity is required in UCC cases is too important for this Court to decide without full briefing and arguments.

## IV—CONCLUSION

In an action seeking recovery for personal injuries caused by a defective product, two separate and distinct warranty theories may be available to a plaintiff—one judicially developed and the other enacted by the Legislature as part of the Uniform Commercial Code. In those cases in which the action is based upon breach of one the code's implied warranties, the statute of limitations found in the code, § 2-725, is applicable.

We leave to the trial court the resolution of the issue whether plaintiffs may properly maintain an action under the code on the facts of this case.

This matter is remanded to the trial court.

No costs.