SZLINIS v MOULDED FIBER GLASS COMPANIES, INC.

OPINION OF THE COURT

1. PLEADING—AMENDMENTS—DISCRETION—STATUTE OF LIMITATIONS
   —ISSUES TRIED BY CONSENT—APPEAL AND ERROR—COURT
   RULES.

   There was no abuse of the trial court's discretion in allowing a
   defendant during the trial in a wrongful death action to amend
   its pleadings to assert the Ohio statute of limitations as a bar
   where (1) the defendant had initially asserted the Ontario
   statute of limitations as a bar, (2) the trial transcript indicates
   that by the implied consent of the parties the case was tried
   with a view to determining whether death occurred in Michi-
   gan, Canadian or Ohio waters, and (3) the assertion of the Ohio
   statute of limitations only made the pleadings conform to the
   proofs and raised no new issues (GCR 1963, 118.3).

2. STATUTES—JUDICIAL NOTICE—FOREIGN STATUTES.

   There is no authority under present statutes for Michigan courts
   to take judicial notice of the statutes of either sister states or of
   a foreign government (MCLA 600.2114a, 600.2118a[3]; MSA
   27A.2114[1], 27A.2118[1][3]).

3. APPEAL AND ERROR—PRESERVING QUESTION.

   An issue not raised in the trial court may not be raised for the
   first time in the Court of Appeals.

4. LIMITATION OF ACTIONS—BORROWING STATUTE—UNIFORM STATUTE
   OF LIMITATIONS ON FOREIGN CLAIMS ACT—STATUTES.

   Michigan's borrowing statute which makes applicable the law of

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur 2d, Limitation of Actions § 471.
   Amendment of pleadings to assert statute of limitations. 59 ALR2d
   169.
[2] 29 Am Jur 2d, Evidence §§ 45–47.
[3] 5 Am Jur 2d, Appeal and Error § 545.
[4, 6–8] 51 Am Jur 2d, Limitation of Actions § 67.
[5] [No Reference]
[6] 22 Am Jur 2d, Death §§ 36, 37, 40–46.

the forum state or the law of the situs state, "whichever bars the claim", requires the Court of Appeals to examine not only the time period of the limitation statute but also the accrual time of the cause of action which triggers the running of the limitation period (MCLA 600.5861[2]; MSA 27A.5861[2]).

5. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—WRONGFUL DEATH ACT—TORTS—COURT CONSTRUCTION—STATUTES.

Michigan's wrongful death act contains no statute of limitations; therefore, the limitation has been supplied by court construction which adopts the three-year tort statute as the period of limitation for actions under the wrongful death act (MCLA 600.2922, 600.5805; MSA 27A.2922, 27A.5805).

6. ACTION—ACCRUAL OF CAUSE OF ACTION—WRONGFUL DEATH—LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS.

The cause of action for a wrongful death and damages resulting therefrom accrue when the death occurs and where the death and damage were suffered; therefore, where a plaintiff's decedents' wrongful death occurred in either Ontario or Ohio waters and a wrongful death action was commenced in Michigan by the plaintiff after the running of the Ontario and Ohio limitations periods the plaintiff's claim is barred due to the expiration of the limitations period.

7. CONSTITUTIONAL LAW—EQUAL PROTECTION—BORROWING STATUTE—LIMITATION OF ACTIONS—PURPOSE OF STATUTE—STATUTES.

Michigan's borrowing statute does not violate a plaintiff's right to equal protection of the law by discriminating against Michigan residents killed outside the state because (1) Michigan does provide a forum for those injured outside the state, (2) the statute has a reasonable purpose, the resolution of conflict of laws questions, and (3) there is a reasonable relation between the statute's purpose and the unequal classes which it creates (MCLA 600.5861[2]; MSA 27A.5861[2]).

CONCURRENCE BY BRONSON, J.

8. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—BORROWING STATUTE—IRRESPONSIBLE CONDUCT—STATUTES.

*Michigan's Legislature has chosen not to exempt Michigan residents from the often harsh application of the borrowing statute; therefore, the Court of Appeals is bound to apply the statute where by its terms it is applicable even though the result may be to hold that a defendant cannot be held for its irresponsible conduct despite the fact that (1) the defendant's*

*action may amount to criminal irresponsibility, and (2) the claim would not be barred if the accident had occurred in Michigan (MCLA 600.5861[2]; MSA 27A.5861[2]).*

Appeal from Wayne, James Montante, J. Submitted June 6, 1977, at Detroit. (Docket No. 27773.) Decided December 5, 1977. Leave to appeal granted, 402 Mich —.

Complaint by William J. Szlinis, executor of the estates of Gilbert A. Cross and Mary A. Cross, against Moulded Fiber Glass Companies, Inc., Gibbs Boat Co., Frances King, administratrix of the estate of Norman T. Lentz, and North American Rockwell Corporation, for damages resulting from wrongful death by drowning because of the sinking of a sailboat allegedly improperly designed. Accelerated judgment for defendants. Plaintiff appealed. Reversed, 51 Mich App 620 (1974). The matter was tried and a jury verdict was returned for plaintiff against defendant Moulded Fiber Glass Companies, Inc. A judgment notwithstanding the verdict was entered in favor of defendant Moulded Fiber Glass. Plaintiff appeals. Affirmed.

*John R. Wilder* and *Roger A. Needham,* for plaintiff.

*Harvey, Kruse & Westen, P. C.* (by *Richard A. Harvey* and *Paul B. Hynes),* for defendant Moulded Fiber Glass Companies, Inc.

Before: J. H. GILLIS, P. J., and BRONSON and R. E. ROBINSON,* JJ.

R. E. ROBINSON, J. In the late afternoon of June 28, 1969, plaintiff's decedents, Gilbert Cross and his wife Mary Ann, set out for a brief sail from

---

* Circuit judge, sitting on the Court of Appeals by assignment.

their cottage on the Ontario shore of Lake Erie in a small sailboat accompanied by another couple, Norman and Beverly Lentz, the boat's owners, who had recently purchased it new. Approximately 10 hours later, in the early hours of June 29, the boat was found partially submerged within a quarter of a mile from the point of departure. The bodies of the four occupants were found at various times up to August 10, 1969, and at various locations scattered over a distance of 50 miles from the Cross cottage. All were in Canadian waters or on Canadian shores.

On July 15, 1971, plaintiff sued Moulded Fiber Glass Companies, Inc., for wrongful death charging in two counts, negligence and warranty. There were other defendants who are not involved in this appeal.

Defendant moved for accelerated judgment, citing Ontario's one year statute of limitations as a bar, and this motion was granted. On appeal, this Court reversed and returned for trial to establish the place of death. *Szlinis v Moulded Fiber Glass Companies, Inc,* 51 Mich App 620; 215 NW2d 777 (1974).

The proofs before a jury established, and both sides concede, that death could not have occurred in Michigan waters, but that it could have occurred either in Ontario or Ohio waters.

At the close of plaintiff's proofs, defendant moved for a directed verdict on the grounds that plaintiff's claim was barred under both Ontario's one year statute of limitations and under Ohio's two year statute. The trial court granted the motion as to the negligence count and denied it as to the warranty count. At the close of proofs, the jury returned a verdict against defendant-appellee in the sum of $235,000.

Subsequently defendant moved for judgment notwithstanding the verdict and this was ultimately granted, the trial court basing its decision on *Parish v B F Goodrich Co,* 395 Mich 271; 235 NW2d 570 (1975). Plaintiff's appeal from that decision raises several issues worthy of discussion, the most critical one being the applicability of *Parish* to these facts.

## I.

Plaintiff first charges that the trial court erred when it permitted defendant, during the trial, to amend its pleadings to assert the Ohio statute of limitations as a bar. We do not agree.

GCR 1963, 118.3 provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case an amendment of the pleadings to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, amendment to conform to such proof shall not be allowed unless the party desiring amendment satisfies the court that the amendment and the admission of such evidence would not prejudice the objecting party in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

The place of death has been uncertain from the beginning of this case and is uncertain as of this writing. The only thing known on the subject with certainty is that death did not occur in Michigan waters, and that it occurred either in Ontario waters or in Ohio waters. At this point, Michigan's

borrowing statute, being the Uniform Statute of Limitations on Foreign Claims Act, becomes important:

"The period of limitation applicable to a claim accruing outside of this state shall be either that prescribed by the law of the place where the claim accrued or by the law of this state, whichever bars the claim." MCLA 600.5861(2); MSA 27A.5861(2)

Defendant has from the beginning asserted limitations as a bar to plaintiff's claim, the initial basis asserted being the Ontario statute. However, a reading of the trial transcript, particularly the testimony of Dr. Saylor, persuades us that from the pretrial on, by the implied consent of the parties, this case was tried with a view to determining whether death occurred in Michigan, Canadian or Ohio waters. The assertion of the Ohio limitations by amendment during the trial only made the pleadings conform to the proofs and raised no new issue. *Pleger v Bouwman,* 61 Mich App 558; 233 NW2d 82 (1975). Plaintiff relies heavily on *Wilson v Eubanks,* 36 Mich App 287; 193 NW2d 353 (1971), to support his claim that a failure to plead the bar of a foreign statute of limitations in the first responsive pleading is not amendable, but see *Bigelow v Walraven,* 392 Mich 566; 221 NW2d 328 (1974). We find no abuse of discretion by the trial judge in allowing this amendment to the pleadings.

II.

Plaintiff next charges error by the trial court in taking judicial notice of the Ontario and Ohio statutes of limitation. Again we disagree.

"Courts ordinarily do not take judicial notice of the laws of a foreign country, but the rule is otherwise where it is so provided by statute." 31 CJS, Evidence, § 21, 867.

Former MCLA 600.2114; MSA 27A.2114 permitted courts to take judicial notice of the laws of a sister state, and Michigan case law which recognized such authority relied on this statute or its predecessor. But there is no authority under present statutes for our courts to take judicial notice of either the statutes of sister states or of a foreign government, MCLA 600.2114a, 600.2118a(3); MSA 27A.2114(1), 27A.2118(1)(3).

In his brief in opposition to defendant's motion for judgment notwithstanding the verdict, however, plaintiff stipulated that Ontario had a one year statute of limitations, RSO 1950, ch 132, § 5 (actually RSO 1970, ch 164, § 5, is the applicable section), and that Ohio had a two year statute of limitations (ORC 2125.02). He further stipulated the same during oral argument on defendant's motion for directed verdict at the close of plaintiff's proofs. Plaintiff cannot now assert for the first time on appeal that the trial court has no authority to take judicial notice of foreign statutes. *Mauricio v Tobias,* 52 Mich App 127; 216 NW2d 602 (1974), and cases cited therein.

Appellant makes the point that various Michigan (MCLA 600.5852; MSA 27A.5852, MCLA 600.5853; MSA 27A.5853), Ohio (ORC 2305.15), and Ontario (RSO 1970, ch 246, § 48) statutes tolled the running of the limitation statute. These statutes are directed toward defendants who are not amenable to the jurisdiction of the forum state and are not applicable to this case. But again this issue was not raised below and cannot be raised for the first time in this Court. *Mauricio, supra.*

### III.

Plaintiff asserts that defendant extended the limitation period by fraudulently concealing the existence of plaintiff's cause of action. This issue was not raised in the trial court and will not be heard here. *Mauricio, supra.*

### IV.

Plaintiff finds error in the trial court's ruling that a cause of action for wrongful death resulting from a defective product accrues at the time of death. If the cause of action accrued at the time the defect was discovered, as urged by plaintiff, then plaintiff's claim is not barred by either the Ontario or Ohio limitations statute.

The principle announced by Justice Cooley in *Price v Hopkin,* 13 Mich 318, 324 (1865), is still valid today:

"The general power of the legislature to pass statutes of limitation is not doubted. * * * But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. * * * It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought."

In the case before us, the jury apparently found that death resulted from latent defects in the construction of the sailboat, and there is support for this finding in the record. Plaintiff contends that his cause of action should not accrue "earlier than the time when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered", the claimed defect, paraphrasing *Dyke v Richard,* 390 Mich 739, 747; 213 NW2d 185

(1973). Continuing, plaintiff urges that any earlier accrual date is directly contrary to the principle enunciated in *Price, supra,* since it was more than a year after death before testing by experts disclosed the defects, and such time, according to plaintiff, was the minimum time during which discovery could have been made with the exercise of reasonable diligence. Recent case law makes it unnecessary to inquire into the validity of this factual claim.

Michigan's borrowing statute, *supra,* which makes applicable the law of the forum or the law of the situs *"whichever bars the claim"* (emphasis supplied), requires us to examine not only the time period of the limitation statute but also the accrual time of the cause of action which triggers the running of the limitation period. *Waldron v Armstrong Rubber Co (On Remand),* 64 Mich App 626, 636; 236 NW2d 722 (1975).

The basis for action in this case, whether applying the law of Michigan, Ontario or Ohio, rests in a wrongful death statute.

## Michigan

The wrongful death statute—

"Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default * * * . All actions for such death, or injuries resulting in death, shall be brought only under this section". MCLA 600.2922; MSA 27A.2922.

Limitations—

"The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property". MCLA 600.5805(7); MSA 27A.5805(7).

MCLA § 600.5805 (Stat Ann 1962 Rev § 27A.5805), the three-year statute of limitations, applies to wrongful death actions". *Rhule v Armstrong,* 20 Mich App 573, 574; 174 NW2d 292 (1969), *aff'd,* 384 Mich 709; 187 NW2d 223 (1971), citing *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965), and *Kushmaul v Consumers Power Co,* 3 Mich App 626; 143 NW2d 154 (1966).

Accrual—

"the cause of action for a wrongful death and damages resulting therefrom accrues when that death occurs". *Coury, supra,* at 251, see also *Rhule, supra,* 384 Mich at 717.

ONTARIO

The wrongful death statute (The Fatal Accidents Act)—

"Where the death of a person has been caused by such wrongful act, neglect or default, as, if death had not ensued, would have entitled the person injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, is liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances amounting in law to culpable homicide". RSO 1970, ch 164, § 2.

Limitations—

"Not more than one action lies for and in respect of the same subject-matter of complaint and every such action shall be commenced within twelve months after the death of the deceased and not afterwards." RSO 1970, ch 164, § 5.

Accrual—Upon the death of the decedent. See RSO 1970, ch 164, § 5 above.

"The limitation period specified in the Fatal Accidents Act is absolute." J. S. Williams, Limitation of Actions in Canada (1972), p 184. (Footnote omitted.)

## OHIO

The wrongful death statute—

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the corporation which or the person who would have been liable if death had not ensued * * * shall be liable to an action for damages, notwithstanding the death of the person injured." ORC 2125.01.

Limitations—

"Except as otherwise provided by law, every such action must be commenced within two years after the death of such deceased person." ORC 2125.02.

Accrual—Upon the death of the decedent. See ORC 2125.02 above.

"It would seem, therefore, settled in Ohio that the time limitation in the wrongful-death statute does not constitute a remedial limitation upon the right of action. Commencing the action within the prescribed time is a necessary element of the right to bring it and if a petition shows upon its face that it is not filed within the two-year period, a demurrer to it must be sustained, not because a statute of limitation is interposed as a defense but because an averment of an essential element of the action is absent". *Sabol v Pekoc*, 148 Ohio St 545, 554; 76 NE2d 84 (1947).

Since Michigan's death act contains no statute of limitations, the limitation has been supplied by court construction which adopts the three-year tort statute as the limitation. *Rhule, supra,* 20 Mich App at 574. Contrary to our statute, the Ontario and Ohio death acts each contain their own limitations which commence to run on date of death.

Counsel on both sides of this controversy rely on *Parish, supra,* to support their positions in this case. It is our opinion that *Parish,* or that part of it which speaks to the limitation period and its accrual, is not applicable here. Although it, like this case, involves an assertion of liability based on warranty of an allegedly defective product, the asserted liability does not depend for its existence on the death act. It perhaps should be noted, however, that applying *Parish,* which found the three-year tort statute applicable to product warranty cases (whether based on tort or contract) and established the accrual date as the date when all the elements of the cause of action are present, would produce the same result as is reached here under the wrongful death act, *i.e.,* a three-year limitation period commencing on date of death.

Plaintiff urges upon us *Dyke, supra,* in support of his claim that the period of limitations commences when the defect was discovered or by diligent effort should have been discovered. This argument overlooks the fact that the opinion in *Dyke* restricted this approach to malpractice cases. Likewise does *Parish* restrict such an approach to those cases involving consumer actions against suppliers of services. We hold that plaintiff's claim accrued on the date of death, and, following *Parish, supra,* we hold that it accrued where injury (death) and damage were suffered. Whether this

was in Ontario or in Ohio waters, plaintiff's claim is barred by the statute of limitations, be it Ontario's one-year statute or Ohio's two-year statute.

Plaintiff finally asserts that Michigan's borrowing statute violates his right to equal protection of the laws by discriminating against Michigan residents killed outside the state. We disagree.

Contrary to plaintiff's first asserted claim of discrimination, Michigan obviously does provide a forum for those injured outside the state.

The more valid question is plaintiff's assertion that the borrowing statute discriminates between Michigan residents injured in Michigan and Michigan residents injured outside Michigan where the limitation periods are frequently shorter than Michigan's. Since this is true, we must inquire whether there is a reasonable relation between the classes thus created and the purpose of the statute.

This purpose, as stated in *Parish,* is to resolve possible conflicts of laws that may arise when a plaintiff's claim arises outside the forum and to limit forum shopping. *Parish, supra,* at 278. The tendency of this statute is to bar residents of Michigan and nonresidents alike, who suffer personal injury outside of this state, from maintaining an action in Michigan unless commenced not later than the time allowed by the state of injury. *Parish, supra,* at 284. The borrowing statute unquestionably resolves many conflicts of laws questions. It thus appears not only that the purpose of the statute is reasonable, but that there is a reasonable relation between its purpose and the unequal classes which it creates.

If this appears to produce a harsh result, we refer the reader to Justice LEVIN's comment in *Parish, supra,* at 283–284:

"But the Legislature could have both barred nonresidents from coming into this state in search of a longer statute of limitations and allowed Michigan residents (who generally are not forum shopping) the benefit of Michigan's frequently longer limitational period by exempting, as many states have, its own residents from the restrictions of its borrowing statute.

"The Legislature, however, on the recommendation of the Commissioners on Uniform State Laws, has chosen an undifferentiating course barring Michigan residents, as well as nonresidents, from maintaining actions in Michigan courts that accrue in another state and which are time-barred in that state. This suggests that there is no legislative policy of special concern for Michigan residents overriding the considerations which prompted the Commissioners on Uniform State Laws to make residence irrelevant."

Affirmed, with costs to defendants.

J. H. GILLIS, P. J., concurred.

BRONSON, J. (concurring). I concur in my colleagues' well-written opinion. I write separately to highlight the tragic circumstances of this case.

In 1969, Norman and Beverly Lentz purchased in Michigan a small sailboat manufactured by defendant. They took the boat to their cottage in Ontario shortly thereafter. On June 28, 1969, the Lentzes and plaintiff's decedents took the boat out for a brief sail. Some ten hours later, the boat was found, upside down and full of water. The bodies of the four occupants were later recovered. Plaintiff instituted this action on July 15, 1971.

Plaintiff's action would have been timely if the accident had occurred in Michigan. The Legislature and courts of this state have determined that three years is the proper limitation period for wrongful death actions. *Ruhle v Armstrong,* 20 Mich App 573; 174 NW2d 292 (1969), *aff'd,* 384 Mich 709; 187 NW2d 223 (1971). See MCLA

600.5805; MSA 27A.5805. However, Michigan has adopted a Uniform Statute of Limitations on Foreign Claims Act, MCLA 600.5861; MSA 27A.5861, which provides in part:

"(2) The period of limitation applicable to a claim accruing outside of this state shall be either that prescribed by the law of the place where the claim accrued or by the law of this state, whichever bars the claim."

In the case at bar, the claim accrued where the deaths occurred—either in Ontario or Ohio. *Parish v B F Goodrich Co,* 395 Mich 271; 235 NW2d 570 (1975). Under either jurisdiction's wrongful death limitation statute, plaintiff's claim was untimely. See RSO 1970, ch 164, § 5 (one year), ORC 2125.02 (two years).

It can be seen that the result of Michigan's borrowing statute is that policy decisions of the legislatures and courts of other jurisdictions often control the time within which a Michigan plaintiff must institute suit. The policy decisions of the Michigan Legislature are disregarded if a Michigan plaintiff's claim happens to accrue outside of Michigan. Justice LEVIN's opinion for the Court in *Parish v B F Goodrich Co, supra,* at 283–284, recognized this paradox:

" 'The state [of purchase] has a concern for the control of its own commercial climate: for protecting those who come to purchase, and for exacting assurances of safety from those who do business in its markets.' Note, *Products Liability and the Choice of Law,* 78 Harv L Rev 1452, 1464 (1965).

"Analogous reasoning would emphasize the state's interest in protecting its residents against short statutes of limitations of infortuitous places where breach, injury or damage is suffered.

\*    \*    \*

"The Legislature, however, on the recommendation of

the Commissioners on Uniform State Laws, has chosen an undifferentiating course barring Michigan residents, as well as nonresidents, from maintaining actions in Michigan courts that accrue in another state and which are time-barred in that state." (Footnote omitted.)

Although the Legislature could have exempted Michigan residents from the often harsh application of the borrowing statute, it has not chosen to do so. See *Parish v B F Goodrich Co, supra,* at 283 and n 20; *Long v Pettinato,* 394 Mich 343, 349; 230 NW2d 550 (1975).

Thus, in the case at bar, the tragic deaths caused by what appears to be defendant's clear negligence cannot be compensated.[1] This seems an unconscionable result, but we are bound under the borrowing act to hold that plaintiff's claim was untimely. Thus, plaintiff's claim was untimely under MCLA 600.5861; MSA 27A.5861 and both the Ontario and Ohio limitation statutes.

This result is incredible in light of evidence of appellee's wanton disregard for human life. The first boats of the type purchased by the Lentzes left defendant's factory on February 18, 1969. On December 27, 1968, the boat's designer had recommended improving the seal of the gunwale. His recommendations were ignored. On March 7, 1969, the boat's designer informed appellee of three specific defects: 1) a defective gunwale seal; 2) boats were being built with only two cubic feet of flotation foam, only enough to float the boat without any passengers, rather than the ten cubic feet he had recommended; 3) the centerboard trunk was being manufactured with a hole in it. The designer testified that it was "inconceivable" that the boats would be shipped with those defects. On May 5, 1969, after the Lentzes purchased their

---

[1] A jury awarded plaintiff $235,000 after which the trial judge granted defendant's JNOV motion.

boat, the designer discovered that the defects had not been corrected and again informed appellee of those defects. The presence of these three defects in the Lentzes' boat were confirmed by appellant's experts, who testified that the result of the hole in the centerboard and improper gunwale seal was that water was allowed into the shell of the boat, further reducing its buoyancy.

Appellee never attempted to recall the defective boats or warn dealers or purchasers of those defects.

Appellee's action in this case was reprehensible. On the basis of the testimony presented, appellee knowingly sold deadly instrumentalities to the public without any warning. Such action may amount to criminal irresponsibility. It is solely on the basis of the statute of limitations that I concur in holding that appellee cannot be held financially responsible for its irresponsible conduct; I do so with great misgivings.