RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0419p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CMACO AUTOMOTIVE SYSTEMS, INC., dba
CMA Forging Co., a California corporation,
              *Plaintiff-Appellant,*

                                                    No. 08-1435

        *v.*

WANXIANG AMERICA CORP.,
              *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 05-60087—John Corbett O'Meara, District Judge.

Argued: June 10, 2009

Decided and Filed: December 10, 2009

Before: SILER, COOK, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Timothy D. Wittlinger, CLARK HILL, Detroit, Michigan, for Appellant. Philip J. Kessler, BUTZEL LONG, Detroit, Michigan, for Appellee. **ON BRIEF:** James E. Brenner, Cynthia M. Filipovich, CLARK HILL, Detroit, Michigan, Mahesh K. Nayak, CLARK HILL, Birmingham, Michigan, for Appellant. Philip J. Kessler, BUTZEL LONG, Detroit, Michigan, James F. Gehrke, Michael F. Smith, BUTZEL LONG, Washington, D.C., for Appellee.

_____

## OPINION

_____

GRIFFIN, Circuit Judge. In this diversity action brought in the Eastern District of Michigan, plaintiff CMACO Automotive Systems, Inc. ("CMA"), a California corporation that supplies parts to automobile manufacturers, alleges that defendant Wanxiang America Corporation ("WAC"), a Kentucky corporation with its principal place of business in Illinois, breached an exclusive partnership agreement to manufacture automotive parts for CMA.

CMA's complaint against WAC avers breach of contract, unjust enrichment, unfair competition, tortious interference with contract, and promissory estoppel.

WAC moved for summary judgment, arguing in pertinent part that CMA's claims accrued in California and, by application of Michigan's borrowing statute, MICH. COMP. LAWS § 600.5861, were time-barred by the relevant California statutes of limitation. The district court agreed and dismissed CMA's action in its entirety. The court later denied CMA's motion for reconsideration.

CMA now appeals, arguing that the district court erred in granting summary judgment on its breach of contract and related equitable claims for unjust enrichment and promissory estoppel. We conclude, however, that the district court did not err when it invoked Michigan's borrowing statute and held that CMA's causes of action were untimely filed under California law. We therefore affirm the district court's judgment.

I.

CMA is a California corporation that supplies automotive parts to American automakers and their Tier I and Tier II suppliers. Michael Chi is CMA's president and founder. In May 1998, CMA approached Visteon Corporation ("Visteon"), a Detroit-based automotive supplier that was seeking new overseas sources of axle and drive shaft parts. In July 1998, Visteon issued several Requests For Quotations ("RFQs") to CMA for various automotive components, including three different stud yoke drive shaft parts (the "disputed parts"). CMA responded with price quotes for each of the parts. Shortly thereafter, CMA solicited price quotes from one of its strategic partners, Wanxiang Group Company, Ltd., an automotive parts manufacturer based in Xiaoshan, China, for the parts that were the subject of Visteon's RFQ. Visteon ultimately determined that CMA's prices were competitive and began working with CMA to source the disputed parts for production at manufacturing plants in China.

On September 3, 1998, CMA entered into an exclusive partnership agreement (the "Agreement") with Wanxiang Group Company, Ltd. to manufacture and sell automotive

parts in the United States market.[1]  Pursuant to the Agreement, which expired on July 29, 2003, Wanxiang China agreed, *inter alia*, to keep drawings and specifications supplied by CMA in "absolute confidentiality," "to sell to only [CMA] all quantity of the products manufactured according to the drawings and specifications provided by [CMA]," and "to go exclusively through [CMA] for the increased volume of the oversea[s] orders" for parts identified by CMA.

For its part, CMA agreed to use its business connections in the United States to develop the overseas market, contract its domestic orders to Wanxiang China, provided that other companies' prices and products were comparable, not disclose Wanxiang China's trade secrets or confidential technology, and provide Wanxiang China with technical support and training.

On November 21, 1998, Wanxiang China notified CMA by faxed letter that it was assigning its responsibilities with respect to business in the United States to defendant WAC, its wholly-owned subsidiary.  WAC is incorporated in Kentucky, with its principal place of business in Elgin, Illinois.  CMA and WAC both accepted the assignment.

Following execution of the Agreement, CMA, WAC, and Wanxiang China worked collaboratively over an eighteen-month period to ready Wanxiang China's manufacturing processes for production of the stud yoke parts and to meet the quality assurance standards of certain North American automobile manufacturers.  In September 1998, in response to the earlier request from CMA for a bid, Wanxiang China furnished quotes for seven different automotive parts, including the disputed parts that were the subject of Visteon's July 1998 RFQ.

During this time period, Visteon awarded a supply contract to CMA for certain parts unrelated to the 1998 RFQ.  This supply contract led to the first purchase order

---

[1]The actual signatories to the Agreement were two wholly-owned, China-based subsidiaries of Wanxiang Group Company.  The three companies are hereinafter collectively referred to as "Wanxiang China."

between CMA and WAC under the Agreement.  The purchase order, dated August 28, 2000, called for WAC to manufacture five different parts beginning in September 2000.

CMA alleges that, sometime in late 2000, WAC approached Visteon regarding WAC's desire to establish a business relationship with Visteon and circumvent CMA. On January 10, 2001, Visteon issued an RFQ directly to WAC for price quotes for four drive train components.  CMA claims that three of these components were the disputed parts that Wanxiang China quoted to CMA in 1998; the fourth component was a "three-legged spider part."[2]  Visteon simultaneously sent an identical RFQ to CMA.  According to CMA, Visteon requested that it confirm previously quoted prices and production volumes for the disputed parts.  On January 15, 2001, and again on January 31, CMA, in turn, asked WAC to revalidate the price quotes for the disputed parts originally provided by Wanxiang China in September 1998.  After consulting with Wanxiang China, WAC purportedly refused to do so, claiming that the parts were not the same.

CMA alleges that, as a result of WAC's refusal to revalidate the price quotes for the disputed parts, it was unable to respond to Visteon's January 2001 RFQ by the February 1, 2001, deadline, causing Visteon to purchase the parts elsewhere.  In fact, WAC was this other source.  On January 25, 2001, WAC provided Visteon with price quotes for the RFQ, and, on March 7, 2001, Visteon awarded WAC the contract to produce the disputed parts and ship them directly to Visteon.[3]  The first shipment of the disputed parts by WAC to Visteon occurred in December 2001.  An invoice reflects a shipping date of December 20, 2001, with a destination of Sterling Heights, Michigan.

In January 2005, Visteon cancelled CMA's program to supply it with parts.

On April 21, 2005, CMA filed suit against WAC in the United States District Court for the Eastern District of Michigan, alleging breach of contract, unjust

---

[2]CMA also claims that it had previously provided Wanxiang China with a print from which to manufacture the three-legged spider part.

[3]The contract for the three-legged spider part was not awarded to WAC, but to Worthington Precision Metals, an Ohio company.  Two years later, in April 2003, Worthington awarded WAC a contract to manufacture a component of the three-legged spider part.

enrichment, promissory estoppel, tortious interference with contract, and unfair competition. In its second amended complaint, CMA alleged in pertinent part that in January 2001, WAC "refused to revalidate the Parts, falsely claiming that they were not the same parts Wanxiang China had previously quoted[,]" and that "[a]t the same time [WAC] refused to revalidate the Parts for CMA, [WAC] began negotiating directly with Visteon for the sale of the same Parts." WAC then "breached the Partnership Agreement . . . by selling parts directly to Visteon . . . and other third parties."

Upon the completion of discovery, WAC filed a renewed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for forum non conveniens and a motion for summary judgment. In the latter motion, which is the subject of this appeal, WAC complained that CMA, a California corporation, was forum shopping and sued WAC, a Kentucky corporation based in Illinois, in Michigan in an effort to avoid California's shorter limitations periods. WAC asserted three grounds for summary judgment: (1) CMA's causes of action accrued in California and, under Michigan's borrowing statute, were time-barred by California's statutes of limitation; (2) WAC was not bound by the Agreement; and (3) the disputed parts were not encompassed by the Agreement.

CMA responded by filing its own motion for partial summary judgment. On September 10, 2007, the district court granted WAC's motion for summary judgment, but denied WAC's motion to dismiss and CMA's motion for partial summary judgment. *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, No. 05-60087, 2007 WL 2649244 (E.D. Mich. Sept. 10, 2007). The district court held that Michigan's borrowing statute was triggered because CMA's causes of action accrued in another jurisdiction, California, and, therefore, California's shorter statutes of limitation applied and barred

CMA's claims.**[4]** Specifically, with regard to CMA's breach of contract claim, the court reasoned:

> Under Michigan's borrowing statute, "[a]n action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued." MICH. COMP. LAWS ANN. § 600.5861.
>
> Plaintiff CMA contends that the Michigan Court of Appeals has explained that "the borrowing statute applies only if an action accrued without any essential facts giving rise to the cause of action occurring in Michigan." *Scherer v. Hellstrom*, 270 Mich. App. 458, 462 [716 N.W.2d 307] (2006). Relying on *Scherer*, Plaintiff claims, "*All* of the conduct by WA[C] forming the basis of CMA's claims (both in contract and in tort) took place in *Michigan* (and in this District). It was in *Michigan* where WA[C] approached Visteon, CMA's customer, and persuaded it to bypass CMA. It was in *Michigan* where WA[C] sold the disputed stud yokes to Visteon in late 2001." Plaintiff's resp. br. at 12 (emphasis in original).
>
> As pointed out by defendant WAC, however, the court in *Scherer* based its holding on the fact that the defendant was a Michigan resident. "Because defendant was residing in Michigan *when* she failed to fulfill her promise, the plaintiff's cause of action cannot be said to have accrued 'without this state' as contemplated by the borrowing statute." *Scherer*, 270 Mich. App. at 464 (emphasis added).
>
> In this case, plaintiff CMA is a California corporation suing WAC, a Kentucky corporation located in Illinois. The only Michigan connection is that the alleged breach involved sales of parts to Visteon in Michigan. The Michigan borrowing statute cited above references the place "where the cause of action accrued." Likewise, the Michigan Supreme Court has held that "[a] claim accrues when and where the injury and damage are suffered." *Parish v. B.F. Goodrich*, 395 Mich. 271, 276 [235 N.W.2d 570] (1975). In this case any injury alleged by CMA would have been felt in California, the state in which it is incorporated and has its only place of business, not Michigan. Therefore, Michigan's borrowing

---

**[4]** The borrowing statute requires the application of whatever limitations period is shorter. *Hover v. Chrysler Corp.*, 530 N.W.2d 96, 98 (Mich. Ct. App. 1994). Because Michigan has a shorter limitations period than California with regard to an action alleging unfair competition, the district court applied Michigan's statute of limitations to this claim and held that it was untimely. *See* CAL. BUS. & PROF. CODE § 17208 (providing a four-year limitations period); MICH. COMP. LAWS § 600.5805(10) (establishing a three-year limitations period).

statute applies; and the court will apply California's four-year statute of limitations for written contract cases. CAL. CIV. PROC., CODE § 337.

For purposes of Michigan's borrowing statute, the time a claim accrued is determined under the law of the same [state] as the statute of limitations that is applied. *Szlinis v. Molded Fiber Glass Co., Inc.*, 80 Mich. App. 55, 60 [263 N.W.2d 282] (1977). California law provides that a breach of contract claim accrues at the time of the breach. *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exc.*, 132 Cal. App. 4th 1076, 1085, 34 Cal. Rptr. 3d 157 (2005).

2007 WL 2649244, at *1-2.

The district court then accepted CMA's argument that California law allows for the application of the discovery rule to breach of contract actions,[5] but rejected CMA's claim that it was not aware of the specific facts necessary to establish a claim until 2004. *Id*. at *2. The court found that the claim accrued in January or February 2001, when Visteon sent the RFQ directly to WAC:

At that time Chi had attempted to get [WAC] to revalidate the quote for the [disputed parts], but [WAC] failed to respond. It was at that point that if Chi had investigated, he would have known that [WAC] was not responding because it was giving its own quote to [Visteon]. Thus, under California's four-year statute of limitations, Plaintiff's breach of contract claim is time-barred.

CMA's unjust enrichment and promissory estoppel claims, asserted in the alternative to its breach of contract claim, are also barred under the borrowing statute analysis. The doctrine of laches presumes that quasi-contractual, equitable claims are barred by the corresponding statute of limitations for the analogous action at law. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).

*Id*. at *3.

The district court subsequently denied CMA's motion for reconsideration. CMA now appeals that portion of the district court's order granting summary judgment on its breach of contract, unjust enrichment, and promissory estoppel claims. At the heart of

---

[5]CMA cited *Gryczman v. 4550 Pico Partners, Ltd.,* 107 Cal. App. 4th 1, 6, 131 Cal. Rptr. 2d 680 (2003), in support of this proposition.

this appeal is whether CMA's contract claims "accru[ed] without this state," MICH. COMP. LAWS § 600.5861, so as to trigger Michigan's borrowing statute.

## II.

We review de novo the district court's order granting summary judgment and its denial of CMA's motion for reconsideration of that order. *Med. Mut. of Ohio v. K. Amalia Enter. Inc.*, 548 F.3d 383, 389-90 (6th Cir. 2008). Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Med. Mut. of Ohio*, 548 F.3d at 389. "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The district court's determination that CMA's claims were filed outside the applicable statute of limitations is a conclusion of law that we review de novo. *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009).

## III.

"A borrowing statute is a legislative exception from the general rule that the forum always applies its statute of limitation." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004). Although borrowing statutes vary from state to state, "all provide that the forum state will apply the statute of limitations from the foreign jurisdiction in which the cause of action accrued." *Id.* "[I]f a cause of action arises in a foreign jurisdiction which has a shorter statute of limitations than [the forum] for the same cause of action, [the forum's] courts must 'borrow' the foreign jurisdiction's statute of limitations." *Id.*[6]

---

[6]We apply the law of the state of the borrowing statute to make the initial determination *where* the cause of action accrued. *Willits v. Peabody Coal Co.*, 188 F.3d 510, 1999 WL 701916, at *12 (6th Cir. 1999) (unpublished table decision) (citing *Cope v. Anderson*, 331 U.S. 461, 466-67 (1947)); *see also Mun. High Income Fund, Inc. v. Goldman, Sachs & Co.*, No. 264224, 2006 WL 361149, at *7 (Mich. Ct. App. Feb. 16, 2006) (unpublished) ("Where a claim accrued for purposes of [the borrowing statute] is

Borrowing statutes serve several functions. Most importantly, they impede forum shopping. *Id.* at 589-90; *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 871 (Mich. Ct. App. 1998) (Michigan's borrowing statute "evidences, at a minimum, legislative intent to discourage suits in Michigan that would be time-barred in other states."); *Szlinis*, 263 N.W.2d at 288 (the purpose of Michigan's borrowing statute "is to resolve possible conflicts of laws that may arise when a plaintiff's claim arises outside the forum and to limit forum shopping.") (citing *Parish*, 235 N.W.2d at 572). Moreover, "[b]orrowing statutes embody the idea that the foreign jurisdiction's law should control out of respect for that jurisdiction's territorial sovereignty." *Combs*, 354 F.3d at 591.

We must proceed with caution in interpreting a state's borrowing statute. *Combs*, 354 F.3d at 577. "Sitting in diversity, we are 'not commissioned to take a position regarding the advisability or fairness of the state rule to be applied, but [must] determine the issue as would the highest court of the state.'" *Id.* (quoting *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997) (alteration in original)). "Furthermore, '[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.'" *Id.* at 577 (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc) (alteration in original)).

IV.

In Michigan, a breach of contract action must be brought within six years of the time the claim first accrues. MICH. COMP. LAWS § 600.5807(8). California's similar limitations period for breach of a written contract is four years. CAL. CIV. PROC. CODE § 337; *Doheny Park Terrace Homeowners Ass'n*, 34 Cal. Rptr. 3d at 162. Michigan's borrowing statute provides:

> An action based upon a cause of action *accruing without this state* shall not be commenced after the expiration of the statute of limitations of

determined under Michigan law because this issue does not present a conflict of laws question, but rather a matter of legislative intent."). We then borrow the law of the jurisdiction where the cause of action accrued for purposes of interpreting that state's statute of limitation. *Hover*, 530 N.W.2d at 97-98; *Szlinis*, 263 N.W.2d at 287.

either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply.

MICH. COMP. LAWS § 600.5861 (emphasis added).

Under this statute, "[a] cause of action accruing in another state or jurisdiction commenced in Michigan by a nonresident of this state is barred upon expiration of either the applicable Michigan limitation period or the applicable limitation period of the other state or jurisdiction. In other words, if the statute of limitations of either state or jurisdiction bars the plaintiff's claim, the action should be dismissed." *Hover*, 530 N.W.2d at 98 (citation omitted); *see also Bechtol v. Mayes*, 499 N.W.2d 439, 440 (Mich. Ct. App. 1993). Thus, Michigan's borrowing statute necessarily requires a determination of where and when the action accrued. *Parish*, 235 N.W.2d at 571; *Scherer*, 716 N.W.2d at 310.[7]

There is scant authority from the Michigan courts interpreting the borrowing statute in the context of a breach of contract action. Indeed, the Michigan Court of Appeals' decision in *Scherer* provides the only guidance on this precise issue.

In *Scherer*, the plaintiff brought a breach of contract action against his ex-wife, stemming from a post-divorce loan made to her in 1993. *Scherer*, 716 N.W.2d at 309.

---

[7]As we have noted previously, the elements of time and place of accrual are inextricably intertwined:

> The time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance. The final act which transforms the liability into a cause of action necessarily has both aspects of time and place.

*Willits*, 1999 WL 701916, at *12 (quoting *Helmers v. Anderson*, 156 F.2d 47, 51 (6th Cir. 1946), *aff'd sub nom Cope v. Anderson*, 331 U.S. 461 (1947)).

Moreover, pinpointing *where* a breach of contract accrues can be problematic in certain circumstances, like the present case, in which the place of performance is not of essence to the contract. *See, e.g., Willits*, 1999 WL 701916, at *13 (noting the challenges in ascertaining where a breach of contract action accrued for purposes of Kentucky's borrowing statute, where the contract for the payment of royalties "[did] not specify a place of payment, and the locations of the Plaintiffs were immaterial to the obligation to pay the royalties. [The defendant] was required to pay the Plaintiffs whether the Plaintiffs showed up at [the defendant's] Missouri office, or were living in Kansas or had just moved to China.") (footnote omitted). Likewise, WAC's agreement "to sell to only [CMA] all quantity of the products manufactured according to the . . . specifications provided by [CMA]," and "to go exclusively through [CMA] for the increased volume of the oversea[s] orders" – demands performance irrespective of customer, destination, or geographic location.

At the time the loan was made, the plaintiff resided in Georgia and the defendant lived in Florida. *Id.* Pursuant to the written loan agreement, the plaintiff was not obligated to pay off the loan until the first of three specified events occurred: (1) the sale of the defendant's house in Florida, (2) the refinancing of the Florida house, or (3) on December 1, 1995. *Id.* The defendant subsequently left Florida and, on November 21, 1994, while residing in Michigan, sold the Florida house but failed to pay off the loan or contact the plaintiff. *Id.* On January 20, 2000, the plaintiff commenced a breach of contract action in Michigan. The defendant argued that the claim accrued in Florida and, therefore, under Michigan's borrowing statute, Florida's shorter five-year statute of limitations applied and barred the action. The Michigan Court of Appeals disagreed and explained:

> The phrase "without this state" is not defined in the [borrowing] statute. We observe, however, that the word "without" is commonly defined as: "1. with the absence, omission, or avoidance of; not with; with no or none of; lacking . . . . 2. free from; excluding . . . . 3. not accompanied by . . . ." *Random House Webster's College Dictionary* (1997). Giving these words used in Michigan's borrowing statute their plain meaning, it is clear that the borrowing statute applies only if an action *accrued without any essential facts giving rise to the cause of action occurring in Michigan.*
>
> Consistent with this interpretation, our Supreme Court observed in *Parish v. B F Goodrich Co.*, 395 Mich. 271, 277-278, 235 N.W.2d 570 (1975):
>
> "Most states have enacted 'borrowing statutes' to resolve the possible conflicts of laws that may arise when a plaintiff's claim accrues outside of the forum. Borrowing statutes, including Michigan's, typically confine a plaintiff whose claim accrues outside the forum to the limitational period – of the forum or the state where the claim accrued – allowing the least time to commence the action."
>
> We therefore must determine both when and where plaintiff's cause of action accrued. In Michigan, a breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. To determine what constituted the "wrong upon which the claim is based," we look first to the parties' agreement. . . . On the basis of the parties' agreement, defendant did not have to pay off the loan until the first of the three specified events occurred. Here, the first event occurred on

> November 21, 1994, when defendant sold the Florida house. Upon the sale of the house, defendant was immediately obligated to pay plaintiff the money he had loaned to her. Thus, plaintiff's breach of contract claim accrued on November 21, 1994.

*Id*. at 310-11 (emphasis added) (footnote omitted).**[8]**

The *Scherer* court then rejected the defendant's argument that the claim accrued in Florida because her house was located there:

> [W]hen the Florida house was sold, defendant was residing in Michigan. The parties' agreement did not require defendant to satisfy her obligation to plaintiff with the proceeds from the sale of the Florida house. In fact, the latest payment date contemplated by the parties . . . required the loan to be paid regardless of whether the Florida house was sold or refinanced. Generally, if performance is dependent on a condition precedent, the cause of action does not accrue until the condition is fulfilled and the promise is not performed. Here, the condition was fulfilled when the Florida house was sold, but defendant was residing in Michigan when her obligation to perform on the contract arose. Because defendant was residing in Michigan when she failed to fulfill her promise, the plaintiff's cause of action cannot be said to have accrued "without this state" as contemplated by the borrowing statute. Therefore, the borrowing statute . . . does not apply and plaintiff's claim was timely filed under Michigan's six-year statute of limitations for breach of contract.

*Id.* at 311 (citations omitted).

CMA argues that, like *Scherer*, essential facts giving rise to its contract claim occurred in Michigan, and therefore the borrowing statute does not apply. CMA cites WAC's first shipment of the disputed parts to Visteon's Sterling Heights facility in December 2001 as the crucial accrual event. It further points out that it was in Michigan where WAC contacted Visteon and persuaded it to bypass CMA, and it was CMA's

---

**[8]**The *Scherer* court disagreed with the trial court's finding that the cause of action did not accrue until December 1, 1995, when the plaintiff discovered the breach. The *Scherer* court noted that under Michigan law, "'a plaintiff need not know of the invasion of a legal right in order for the claim to accrue.'" *Id*. at 311 n.2 (quoting *Dewey v. Tabor*, 226 Mich. App. 189, 193, 572 N.W.2d 715 (1997)). *See also Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, P.C. v. Bakshi*, 771 N.W.2d 411, 417 (Mich. 2009) ("For a breach of contract action, the limitations period generally begins to run on the date that the breach occurs.") (footnote omitted); *Mich. Millers Mut. Ins. Co. v. West Detroit Bldg. Co., Inc*., 494 N.W.2d 1, 4 n.1 (Mich. 1992) ("A breach of contract claim accrues on the date of the breach, not the date the breach is discovered.").

business with Visteon in Michigan that was harmed by WAC's breach. Accordingly, CMA maintains that Michigan's six-year statute of limitations controls, and that the April 2005 complaint was timely filed. We disagree, however, that these Michigan connections constitute "essential" or operative facts giving rise to the cause of action in this case.

The Agreement between the parties does not prohibit WAC's direct sale of the disputed parts to an entity in Michigan; it prohibits the direct sale of such parts to a third party, regardless of the location of the client or the destination of the shipment. Thus, as WAC argues, the fact that nonparty Visteon has offices in Michigan "has no substantive impact on CMA's claim – it would be the same if Visteon's offices were in any of the 50 states." This valid point is underscored by CMA's allegation in its second amended complaint that WAC "breached the Partnership Agreement by selling the Parts . . . directly to Visteon . . . *and other third parties*," presumably Worthington Precision Metals in Ohio. (Emphasis added.) Thus, Visteon's involvement and the shipment of parts to Michigan are of only peripheral importance to the accrual of this breach of contract action involving nonresident corporations.

Our conclusion that CMA's contract claim accrued "without this state" requires that we view Michigan's borrowing statute jurisprudence from a broad perspective. "Michigan generally looks to the state of injury under its borrowing statute to determine where the claim accrued." *Mun. High Income Fund*, 2006 WL 361149, at *7 (citing *Parish*, 235 N.W.2d at 575). In *Parish*, the Michigan Supreme Court considered "whether a product liability claim of a consumer against a manufacturer accrues [under the borrowing statute] in the state where the product is sold or the state where the alleged defect in the product becomes apparent, causing injury and damage." *Parish*, 235 N.W.2d at 571. The *Parish* court held "that the claim accrues when and where injury and damage are suffered." *Id*.[9] Otherwise stated, "the product liability claim of a

---

[9]The plaintiffs in *Parish* were injured in an automobile accident in Ohio caused by the blowout of a defective tire. They brought suit against the tire manufacturer in Michigan, where the tire was sold. 235 N.W.2d at 571. The Michigan Supreme Court held that under a prior, but substantively similar, version of the borrowing statute, the plaintiffs' claim accrued in Ohio at the time of the accident and, by application of Michigan's borrowing statute, was governed by Ohio's shorter statute of limitations. *Id*. at

consumer for personal injury against a manufacturer . . . does not accrue for purposes of the borrowing statute until all elements of the cause of action are present." *Id*. at 575-76. *See also Hover*, 530 N.W.2d at 98 (products liability action accrued in Canada, where automobile accident took place and injuries were sustained); *Szlinis*, 263 N.W.2d at 287 (wrongful death action "accrued on the date of death, and, following *Parish*, . . . it accrued where injury (death) and damage were suffered.").

In *Mun. High Income Fund*, the Michigan Court of Appeals extended *Parish*'s accrual analysis to circumstances involving economic, rather than physical, injury. 2006 WL 361149, at *7-8. The plaintiffs, various municipal bond funds with their principal place of business in New York, brought suit in Michigan, where the bonds were issued by a nonparty, alleging that the nonresident corporate defendants were liable for losses to their bond funds on theories of innocent and negligent misrepresentation. *Id*. at *1. Noting that in accordance with *Parish*, "Michigan generally looks to the state of injury under its borrowing statute to determine where the claim accrued[,]" *id*. at *7, the Michigan Court of Appeals held that the plaintiffs' injury occurred "without this state," in New York, "because the economic impact on a plaintiff from a misrepresentation of mutual funds is felt at the plaintiff's principal place of business." *Id*. (citing *Maiden v. Biehl*, 582 F. Supp. 1209, 1214 (S.D.N.Y. 1984)).

In light of the Michigan courts' adherence to the general rule that a cause of action accrues at the place of injury, we find the "economic impact" analysis of *Mun. High Income* to be particularly useful in the present action which, albeit not a tort claim, involves economic injury. Although this rationale is not without its pitfalls,[10] we note that it has been utilized by the New York courts to determine where a cause of action accrues for purposes of New York's similarly worded borrowing statute. *See Global*

---

572.

[10]In *Combs*, in the course of interpreting Kentucky's borrowing statute, we surveyed the different definitions of accrual used by other states and noted that the economic impact analysis "is troubling because one can easily envision a situation where the plaintiff resides in a different forum than the one in which he sustains the economic impact of the loss; for instance, a business incorporated in one jurisdiction but with its principal place of business in another." *Combs*, 354 F.3d at 582 n.5. We further observed that "[i]f a breach of contract causes [a corporation's] stock to decline, determining where the company 'got hurt' is not so easy." *Id*. at n.6.

*Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999) (holding that where the alleged injury was "purely economic," the nonresident corporate plaintiff's breach of contract claims accrued in the jurisdiction in which it sustained the economic impact of the alleged breach – either the state of incorporation or its principal place of business – rather than New York, thus requiring application of the borrowing statute); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, No. 93 CIV. 6876(LMM), 2001 WL 492363, at *4 (S.D.N.Y. May 9, 2001) (unpublished) (following *Global Financial* and holding that under New York's borrowing statute, the conversion claims of the banking corporation plaintiffs accrued at their principal places of business in Europe where they suffered economic injury); *Maiden*, 582 F. Supp. at 1212-14 (applying New York borrowing statute to a fraudulent misrepresentation claim and holding that "[w]here a cause of action accrues still depends on the facts of each case, but the question is always where the plaintiff felt the economic impact of the fraud" and, therefore, "the place of injury for a mutual fund is the principal place of business. . . .").

CMA does not dispute that it is a nonresident California corporation and that the putative economic impact of WAC's alleged breach of the Agreement was in California, where CMA has its principal place of business. The events that transpired in Michigan are certainly causally related to CMA's contractual claims; however, as we have already found, these Michigan connections are merely tangential and not "essential facts giving rise to the cause of action." *Scherer*, 716 N.W.2d at 310.

Because the economic injury suffered by CMA as a result of WAC's alleged direct dealings with Visteon and other third parties was clearly felt at its corporate headquarters, the district court did not err in holding that CMA's contract claim accrued "without the state" – in California – thereby triggering Michigan's borrowing statute and requiring application of California's four-year statute of limitations for written contract cases, CAL. CIV. PROC. CODE § 337. A contrary conclusion would contradict the underlying priority of the Michigan borrowing statute: to impede forum shopping.

V.

Next, we must borrow California's substantive law to interpret its statute of limitations and determine when CMA's claim accrued and whether it is time-barred. *Hover*, 530 N.W.2d at 98.

"California courts have often stated the maxim that '[i]n ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action . . . does not toll the statute.'" *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 826, 195 Cal. Rptr. 421 (1983) (quoting *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187, 98 Cal. Rptr. 837 (1971) (alteration in original)). However, unlike Michigan, California allows for application of a discovery rule "to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *April Enters., Inc.*, 147 Cal. App. 3d at 832. The discovery rule postpones accrual "until a plaintiff knew or should have known of the wrongful conduct at issue." *Id.* (citation omitted). Typically, the discovery rule has been applied by the California courts to "unique" breach-of-contract cases in which (1) the injury or act causing injury (or both) has been difficult for the plaintiff to detect; (2) the defendant was in a far superior position to comprehend the act and the injury; or (3) the defendant had reason to believe the plaintiff remained ignorant that he had been wronged. *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). *See also Gryczman*, 107 Cal. App. 4th at 6 (applying discovery rule in breach of contract action where "the act causing the injury would have been 'difficult for the plaintiff to detect' because . . . the failure to give plaintiff notice of the happening of a certain event is both the act causing the injury and the act that caused plaintiff not to discover the injury.").

Giving CMA the benefit of the doubt and applying the discovery rule to this seemingly "typical contract breach where accrual logically begins at the time of injury[,]" *April Enters., Inc.*, 147 Cal. App. 3d at 831, we conclude that WAC's alleged breach of the Agreement accrued no later than March 7, 2001, when Visteon accepted

WAC's bid in response to the January 2001 RFQ and awarded WAC the business for the disputed parts. On this date, Visteon authorized WAC "to officially begin production efforts in the absence of purchase orders for the [disputed parts]." It was at this point in time that WAC circumvented CMA and contracted directly with Visteon for the manufacture of the disputed parts, which were later shipped to Visteon's facilities in Michigan in December 2001. Certainly this event was a material breach of the Agreement – "a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other part to perform under the contract." 23 Richard A. Lord, *Williston on Contracts* § 63:3 (4th ed. 2009).

Given the events in January and February 2001, CMA, through reasonable diligence, knew or should have known of WAC's wrongful conduct in contracting directly with Visteon for production of the disputed parts. "It is plaintiff's burden to establish facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *April Enters., Inc*., 147 Cal. App. 3d at 833 (citation and internal quotation marks omitted). The evidence of record shows that in early 2001, Visteon informed Chi that WAC was going to quote new business directly to Visteon. Chi understood that CMA would keep its current parts program with WAC, but that new programs could go directly to WAC. Visteon expected CMA to provide a quote for this new business (the January 2001 RFQ) through one of its other strategic partners in China. Moreover, on February 5, 2001, in the course of responding to CMA's revalidation request, WAC informed Chi in writing that WAC had received Visteon's January 2001 RFQ for the disputed parts. Chi admitted that CMA knew it had lost the business for the disputed parts in January when it did not respond to Visteon's RFQ. Thus, the injury or act causing injury was not difficult for Chi to detect. He was aware that WAC was dealing directly with Visteon in February 2001, and WAC's failure to revalidate the quote for the 1998 parts was only confirmation of this fact. The ensuing production order entered into by Visteon and WAC in March 2001 therefore was, with the exercise of reasonable diligence, no surprise.

In sum, CMA's breach of contract cause of action accrued no later than March 7, 2001, and, under California's four-year statute of limitations, is time-barred.  CMA's quasi-contractual, equitable claims of unjust enrichment and promissory estoppel claims are time-barred under the same analysis.  As the district court accurately held, the doctrine of laches presumes that such quasi-contractual claims are barred by the corresponding statute of limitations for the analogous action at law.  *Jarrow Formulas*, *Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 835 (9th Cir. 2002).

VI.

For these reasons, we affirm the judgment of the district court.